ESTATE OF Henry B. LANE and Lorraine E. Lane, Appellants,

v.

Erika G. LANE, a/k/a Erika G. Whitney, Appellee.

No. 5366.

Supreme Court of Alaska.

July 17, 1981.

---

**35.** *Kristich v. State*, 550 P.2d 796, 804 (Alaska 1976).

Edward J. Reasor, Anchorage, for appellants.

Joseph J. Perkins, Jr., Ely, Guess & Rudd, Anchorage, for appellee.

Before RABINOWITZ, C. J., and CONNOR, BURKE, MATTHEWS and COMPTON, JJ.

OPINION

PER CURIAM.

This case was brought as an action for the enforcement of a California judgment against Henry Lane, now deceased. According to the amended complaint, the judgment sought to be enforced is a divorce decree which became final in 1966 and under which Lane was obligated to pay $100 per month as child support for each of his three children by his former wife, Erika Lane, and $100 per month as alimony to her.

Erika Lane first requested that partial summary judgment be entered in her favor as to the amount of arrearages. In support of the motion she referred to a 1976 abstract of judgment issued by the California court, which included a record of accruals and payments on the initial judgment and indicated that the amount owed as of August, 1976, was $47,776.10.[1] She asked the superior court to order that the 1976 California abstract of judgment be enforced against Henry Lane's estate [Estate].[2] Partial summary judgment was entered for the full amount of the California abstract of judgment, less $2,500, plus interest and attorney's fees.[3]

A second motion of Erika Lane for summary judgment sought to establish that certain real and personal property transactions by Henry Lane in 1976 and 1977 were fraudulent conveyances and requested that

1. A copy of this abstract of judgment was attached to the amended complaint in the case as an exhibit.

2. Erika conceded that the California computation of accruals was in error, overstating the amount owed to the extent of approximately $2,500.

3. The motion for summary judgment requested the superior court to enforce the 1976 abstract of judgment, arguing that this was proper under the Uniform Enforcement of Foreign Judgments Act, AS 09.30.200–.270. In fact, however, the amended complaint stated a claim for relief at common law, not under the Uniform Act, and we treat it as such for purposes of this appeal. *See* AS 09.30.240; *Hamilton v. Seattle Marine & Fishing Supply Co.*, 562 P.2d 333

(Alaska 1977); *cf. Hudson v. Hudson*, 569 P.2d 521 (Okl.App. 1976). In any event, the 1976 abstract of judgment is not the judgment itself, and thus was not entitled to enforcement under the Uniform Act. *See* Cal.Civ.Proc.Code § 674 (West). The Uniform Act is simply a device for invoking a foreign state's collection processes. We need not decide here the difficult questions which are raised when an attempt is made to enforce a support decree under the Uniform Act. *See generally Ehrenzwieg v. Ehrenzwieg*, 86 Misc. 2d 656, 383 N.Y.S.2d 487, *aff'd* 61 A.D.2d 1003, 402 N.Y.S.2d 638 (1978); *Willhite v. Willhite*, 546 P.2d 612 (Okl. 1976); *Stone v. Stone*, 268 Or. 446, 521 P.2d 534 (1974) *(en banc); Salmeri v. Salmeri*, 554 P.2d 1244 (Wyo. 1976).

they be set aside. The superior court entered a final judgment in Erika Lane's favor setting aside the conveyances and awarding her the amount adjudicated by the prior motion, together with interest and attorney's fees. The Estate and Lorraine Lane, Henry Lane's widow, now bring this appeal.

## A. Credit Against Arrearages

■ The Estate argues that a credit against the arrearages in the child support obligations should be allowed for two periods during which the children were not living with Erika Lane. Henry B., Jr., lived in Alaska for eighteen months in 1971 and 1972, and Linda Sue was in a foster home in California for a year. Erika Lane argues that the trial court had discretion to refuse to grant credits for these periods and that it did not abuse its discretion by doing so. *See generally* Annot., 47 A.L.R.3d 1031 (1973); *cf. Young v. Williams,* 583 P.2d 201 (Alaska 1978).

Erika Lane testified that she sought to recover for the period her son was in Alaska. We conclude that the superior court did not commit error in denying any offset for the period Henry B. Lane, Jr., resided in Alaska. The Estate relies on *Young v. Williams,* 583 P.2d 201 (Alaska 1978), in support of its position. *Young* cites *Briggs v. Briggs,* 178 Or. 193, 165 P.2d 772, 777 (1946), for the proposition that "special considerations of an equitable nature" may justify a credit to a non-custodial parent for payments voluntarily made directly to children rather than to the custodial parent, "when that can be done without injustice to the [custodial parent]." *Young,* 583 P.2d at 203. However, both *Young* and *Briggs* recognize the majority rule that payments voluntarily made to children by the non-custodial parent are not normally credited against child support obligations.

In the case at bar, the record does not reveal that any direct payments were made to Henry B. Lane, Jr. Erika testified that the state paid for Henry, Jr.'s, support while he was boarding in Tok, Alaska, during his eighteen-month stay, seeing his father only once a month. We therefore conclude that the superior court did not abuse its discretion in not according the Estate a credit for the time Henry, Jr., was in Alaska.[4]

## B. Fraudulent Intent

Henry Lane had been trying to evade his child support obligations for years. Between 1969 and 1976 he was repeatedly dunned by the State of Alaska for his obligations. During this time, Henry was living with Lorraine Tarr, a woman he had met in Washington and whom he had invited to join him on his homestead property near Tok. On October 1, 1976, Erika Lane commenced a private civil lawsuit brought against Henry Lane in Alaska seeking a judgment against him for the total amount of arrearages. Later that month, Henry Lane executed a promissory note in favor of Lorraine Tarr in the amount of $70,000, purportedly in recognition of wages due her for her work on his property near Tok over the previous seven years. He mortgaged his personal property to her as collateral on the note. The lawsuit for arrearages was voluntarily dismissed on December 1, 1976, and a second, apparently identical, lawsuit, culminating in this appeal, was instituted on December 2, 1976.

Henry Lane, at just about the same time, learned that he had bone cancer. On December 14, 1976, he made a will leaving all his property to Lorraine Tarr. At the same time, he deeded over to her the twenty-eight-acre homestead near Tok that he and Lorraine had lived on for the previous seven years. By Christmas of 1976, Henry Lane knew he had only a few months to live. On

---

4. Appellants' statement of points on appeal does not encompass the issue of support for Linda Sue while she was living in a foster home. Thus we will not consider this facet of the case. *Wetzler v. Wetzler,* 570 P.2d 741, 742 n.2 (Alaska 1977). Here appellants' statement of points does not even "impliedly, albeit inarticulately," raise the issue of credit against support owed for the period Linda Sue resided in a foster home in California. *See A.R.C. Industries, Inc. v. State,* 551 P.2d 951, 956 n.12 (Alaska 1976); Alaska R.App.P. 210(e).

February 2, 1977, he married Lorraine Tarr. Five weeks later, he was dead.

The Estate contends that Henry Lane's intent in making those transfers remains in issue. Erika Lane argues that the "badges of fraud" are indisputably present in the case. She argues that the Estate has done no more than allege that a factual issue exists by making conclusory allegations, and that therefore summary judgment in her favor was proper.

■ It cannot be denied that a number of the "badges of fraud" enumerated in *First National Bank v. Enzler*, 537 P.2d 517, 522 (Alaska 1975), are present in the case. However, the mere presence of these indicia of fraud is in itself insufficient to warrant summary judgment, since the badges are merely evidentiary: they are circumstantial evidence of intent, no more. *Blumenstein v. Phillips Insurance Center, Inc.*, 490 P.2d 1213, 1223 (Alaska 1971); *Matheson v. Patenaude*, 8 Alaska 238, 243 (D. Alaska 1930).

■ Furthermore, based on the facts introduced by Lorraine Lane through her deposition testimony, an alternative explanation of Lane's acts is supported. Lorranie testified that Henry told her he had transferred the property to her:

> because he says I worked just as hard on that place as he did and I spent a lot of lonely hours there, and he said that place is just as much mine as it is yours.

Based on this testimony, the fact-finder could conclude that Lane's intent was to make a gift in recognition of Lorraine's "sweat equity" in the property, rather than to defraud his first wife. We therefore conclude that the superior court's summary judgment setting aside the questioned conveyance of real property and transfers of personal property to Lorraine Tarr was erroneous.[5]

---

**5.** *See generally Harris v. Guaranty Title Co.*, 510 P.2d 501, 503 (Alaska 1973).

**6.** Civil Rule 77(1) provides:

The presentation to the court of frivolous or unnecessary motions or frivolous or unnecessary opposition to motions, which unduly delay the course of the action or proceeding, or the filing of any motion to dismiss

**C. Attorney's Fees**

The Estate contends that the attorney's fees awarded were excessive. In support of this position it argues that the issues at the hearing on the initial motion for partial summary judgment were not complex, and did not require the approximately eighty hours of attorney time allegedly devoted to this initial motion. The Estate further contends that the provisions of Civil Rule 82 are intended only to partially compensate the prevailing party.

Erika Lane counters, stating that the award of attorney's fees was based on Civil Rule 77(1), not Civil Rule 82, and was not excessive. Since, in her view, the opposition to the two motions was frivolous, the amount awarded by the superior court was justified.

The superior court granted attorney's fees to Erika of $7,320.30 on the motion for partial summary judgment and $6,910.50 on the second motion for summary judgment. From the record, it does appear that Erika had only moved for attorney's fees under Civil Rule 77, and that she thought that the first award of attorney's fees was based on Civil Rule 77, which allows the court to tax attorney's fees against a party as a sanction for presenting to the court a frivolous motion or opposition to a motion.[6]

Because we are reversing the trial court's entry of summary judgment on the second issue, fraudulent conveyance, the award of attorney's fees made in conjunction with the entry of summary judgment on that issue is vacated, and remanded to the trial court to await final resolution of that issue. It does not appear to us that the Estate's opposition to the motion for partial summary judgment on the issue of arrearages was

or motion to strike for the purpose of delay where no reasonable ground appears therefor subjects counsel presenting or filing such, at the discretion of the court, to imposition of costs and attorney's fees to the opposing party, to be fixed by the court and paid to the clerk of court, and any other sanctions, which may be authorized by rule or law.

frivolous or unnecessary. For that reason, we vacate the award of attorney's fees made under Civil Rule 77 on that issue and remand to the trial court with instructions that any attorney's fees awarded on the issue of arrearages be made under Civil Rule 82 and that any award of attorney's fees be deferred until the fraudulent conveyance issue has been resolved, so that the attorney's fees on both issues may be decided as one whole award.

Affirmed in part, reversed in part.[7]

---

7. We note that the statute of limitations issue listed in appellants' statement of points on appeal was not argued in the appellants' briefs to this court and is therefore considered waived. *Wetzler v. Wetzler*, 570 P.2d 741, 742 n.2 (Alaska 1977).