[No. 14784-0-II.    Division Two.    March 10, 1993.]

WOODCREEK LAND LIMITED PARTNERSHIPS I, II, III & IV,
ET AL, *Respondents*, v. THE CITY OF PUYALLUP,
ET AL, *Appellants*, PAUL H. IMESON,
ET AL, *Respondents*.

2

*P. Stephen DiJulio* and *Foster, Pepper & Shefelman,* for appellants.

*Stephanie A. Arend* and *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim; Lawrence E. Nelson; Bryce H. Dille* and *Campbell, Dille & Barnett,* for respondents.

WIELAND, J.[*] — The City of Puyallup appeals from the summary judgment granted in favor of the Woodcreek Land and Meridian Associates limited partnerships, which invalidated two ordinances under which the partnerships were assessed "latecomer" costs for street improvements. We affirm.

FACTS

In 1985 and 1986, the City of Puyallup commissioned traffic studies of South Meridian Street, the major north-south arterial in that portion of the city. The studies recommended widening South Meridian Street into a 5-lane road. The City then developed its plans for the South Meridian Street Improvement Project, which would widen the roadway, install curbs, gutters and sidewalks, relocate power and

---

[*]Judge Herbert E. Wieland is serving as a judge pro tempore of the Court of Appeals pursuant to CAR 21(c).

telephone cables underground, improve utilities, add street lighting, and improve traffic signals. The project was divided into two phases. The phase I improvements were completed in 1988 at a cost of $2 million and the phase II improvements were completed in 1990 at a cost of $3,460,000. State and federal grants provided over $3 million of the total funding for the improvements. The project also called for the City to seek reimbursement from property owners in the affected area for $1,266,000, 23 percent of the cost of the project.

During the planning of the project in 1987, the City indicated its intention to use "latecomer reimbursement agreements" to obtain reimbursement from the property owners. However, it took no action in this regard until 1988. In May and June, Richard H. Shaw and the Nordevin Company received conditional use permits for development of properties along South Meridian Street. Those permits were subject to the condition that the owners participate in paying for the street improvements through an assessment reimbursement contract, pursuant to RCW 35.72. In November 1988, 6 months after the phase I improvements had been completed, the City enacted ordinance 2183, which formulated an assessment reimbursement area, preliminarily determined the area boundaries and assessments, provided for notice to affected property owners in the area, and scheduled a public hearing for comment on the proposed reimbursement area. The affected property owners were notified, and public hearings were held. The City then notified the property owners within the proposed area that it intended to consider an ordinance confirming the assessment reimbursement area. After considering the ordinance at two public meetings in January 1989, the city council passed the ordinance, titled ordinance 2190, in February 1989.

Pursuant to ordinance 2190, the City began imposing assessments against properties within the South Meridian Street Improvement Reimbursement Area approved in the ordinance. Although draft assessment reimbursement contracts with Shaw and Nordevin were prepared, those con-

tracts were not finalized or executed and apparently remain under negotiation, delayed by these proceedings.

Woodcreek Land Limited Partnerships I, II, III and IV own property in phase I of the project. Meridian Associates Limited Partnership owns property in phase II of the project. After receiving assessments from the City, the partnerships commenced an action in May 1989 for declaratory relief and for a writ of review, seeking to invalidate ordinance 2190 on the grounds that the assessment procedure did not comply with the RCW 35.72 requirement of assessment reimbursement contracts. The City answered and filed a third party class action against the other property owners within the reimbursement area defined in ordinance 2190. After the class was certified, Good Samaritan Community Health Care was granted leave to intervene.

In November 1990, the partnerships and the third party defendants moved for summary judgment on the issue of the validity of ordinance 2190. On February 15, 1991, the trial court granted the motion for summary judgment, ruling that ordinances 2183 and 2190 were void for noncompliance with RCW 35.72. The trial court reasoned that the statute required Puyallup to execute and file the assessment reimbursement contracts with Shaw and Nordevin prior to adopting those ordinances, and further, that this requirement is jurisdictional. The court further ruled that the assessments that had been collected under the ordinances must be refunded to the partnerships and the third party defendants, and that the City was "estopped from attempting to cure the jurisdictional defects of Ordinances 2183 and 2190 by executing and filing the contracts now, in that "the pre-existence of the contracts is the sine qua non of a valid ordinance under RCW Chapter 35.72." The parties agreed that the order on summary judgment was a final, appealable order.

## ANALYSIS

RCW 35.72 authorizes cities, towns and counties to contract with property owners for the construction and improvement of streets by the property owner. The contracting

property owners may be reimbursed by other property owners who benefit from the street improvements. RCW 35.72 provides:

> The legislative authority of any city, town, or county may contract with owners of real estate for the construction or improvement of street projects which the owners elect to install as a result of ordinances that require the projects as a prerequisite to further property development.

## RCW 35.72.010.

The contract may provide for the partial reimbursement to the owner or the owner's assigns for a period not to exceed fifteen years of a portion of the costs of the project by other property owners who:

(1) Are determined to be within the assessment reimbursement area pursuant to RCW 35.72.040;

(2) Are determined to have a reimbursement share based upon a benefit to the property owner pursuant to RCW 35.72-.030;

(3) Did not contribute to the original cost of the street project; and

(4) Subsequently develop their property within the fifteen-year period and at the time of development were not required to install similar street projects because they were already provided for by the contract.

## RCW 35.72.020.

The reimbursement shall be a pro rata share of construction and reimbursement of contract administration costs of the street project. A city, town, or county shall determine the reimbursement share by using a method of cost apportionment which is based on the benefit to the property owner from such project.

## RCW 35.72.030.

The procedures for assessment reimbursement contracts shall be governed by the following:

(1) An assessment reimbursement area shall be formulated by the city, town, or county based upon a determination by the city, town, or county of which parcels adjacent to the improvements would require similar street improvements upon development.

(2) The preliminary determination of area boundaries and assessments, along with a description of the property owners' rights and options, shall be forwarded by certified mail to the property owners of record within the proposed assessment area. If any property owner requests a hearing in writing

within twenty days of the mailing of the preliminary determination, a hearing shall be held before the legislative body, notice of which shall be given to all affected property owners. The legislative body's ruling is determinative and final.

(3) The contract must be recorded in the appropriate county auditor's office within thirty days of the final execution of the agreement.

(4) If the contract is so filed, it shall be binding on owners of record within the assessment area who are not party to the contract.

RCW 35.72.040.

The dispute in this case involves (1) the meaning of RCW 35.72.010 with regard to "ordinances that require the projects" and (2) the proper sequence of events necessary to create a contract "binding on owners of record within the assessment area who are not party to the contract." RCW 35.72.040(4).

RCW 35.72.010 describes the party with whom the City may contract as a property owner who "elect[s] to install [improvements] as a result of ordinances that require the projects as a prerequisite to further property development." The City argued below and at oral argument that Title 21 of the Puyallup Municipal Code, which set up the City's environmental policy and which adopted the City's Comprehensive Plan, provided the necessary showing under RCW 35.72.010. We disagree.

■ Nothing in Title 21 provides for a prerequisite of road improvements as a condition to development along South Meridian Street. While that ordinance does express an intent to improve South Meridian Street and an intent to collect from the adjacent property owners, it does not require such improvements as a condition to further property development. More than intention is required. *Buckley v. Tacoma*, 9 Wash. 253, 263, 37 P. 441 (1894); *Edwards v. Renton*, 67 Wn.2d 598, 602, 409 P.2d 153, 33 A.L.R.3d 1154 (1965). Counsel for the City admitted at oral argument that no specific ordinance existed, but urged this court to look to its general authority. We decline to do so.

The City also suggests that it complied with RCW 35.72-.010 by other actions. However, we do not find any ordinance

that meets the requirement. On May 4, 1987, the Puyallup City Council met and approved the preliminary stages of development, dividing the road improvements into two phases. No ordinance resulting from that meeting meets the requirements of RCW 35.72.010. Next, conditional use permits were issued to Nordevin and Shaw. While consistent with the intention of the City to improve South Meridian Street, those permits are not and do not have the effect of ordinances. Nor did the passage of city ordinances 2183 and 2190, adopting reimbursement areas, cure the defect. While these ordinances are consistent with the procedural requirements of RCW 35.72, they do not condition development of property on South Meridian Street on road improvements. Rather, these ordinances merely establish a method of financing the already existing improvements.

Further, our position is supported by sound policy that can easily be gleaned from the statute. The existence of an ordinance that requires improvement as a condition to development provides notice to potential purchasers that property in the area may be subject to reimbursement assessments. To apply RCW 35.72 after the fact, as the City has done here, provides no advance notice. Certainly, the Legislature did not contemplate such a result.

Although our discussion of the lack of any ordinance as required by RCW 35.72.010 resolves this case, we address the issue of the necessary timing for contract finalization and execution as it formed the basis for the trial court's granting of summary judgment. We agree with the City's contention that ordinances establishing the assessment reimbursement area and formula, pursuant to RCW 35.72-.040(1) and (2) and RCW 35.72.030, may be enacted before the City enters into an assessment reimbursement contract that can be finalized and executed under RCW 35.72.020, and then recorded under RCW 35.72.040(3). Otherwise some property owners would be unwilling to sign the assessment reimbursement contract without knowledge of the amount of reimbursement they would receive from other property owners.

Although assessment reimbursement contracts need not be finalized prior to the adoption of ordinances establishing the reimbursement area and payment shares, the City cannot collect assessments until the reimbursement contracts have been finalized and executed. We conclude that the appropriate sequence is as follows:

1. The owner of property has property that it wishes to develop, but a prerequisite of that development is an ordinance requiring the construction or improvement of street projects. RCW 35.72.010.[1]

2. The owner elects to install those required projects, and it proposes to the city, town or county (hereinafter city) that an assessment reimbursement contract be created. RCW 35.72.010.

3. The city may agree to a contract in which the owner can be reimbursed for a portion of the costs of the projects by other property owners. RCW 35.72.020.

4. The contract between the city and the owner constructing the projects must identify the other properties within the assessment reimbursement area that would be liable to assessment, and must include the reimbursement shares of those other properties. RCW 35.72.020(1), (2).

5. The city determines the reimbursement share by selecting a method of cost apportionment based on the benefit of the projects to the other property owners. RCW 35.72.030.

6. The city formulates the assessment reimbursement area based on a selection of parcels adjacent to the projects that will require similar street improvements upon development. RCW 35.72.040(1). After making a preliminary determination of the boundaries of those parcels, the city must notify the record owners of those parcels, by certified mail, of the proposed assessment area, the assessment

---

[1]As an alternative to the sole financing by owners of real estate, the city may join in the financing of improvement projects and may be reimbursed in the same manner as owners of real estate who participate in the projects, if the city has specified the conditions of its participation in an ordinance. RCW 35.72.050. There is no contention that the City has followed RCW 35.72.050 here.

share, and the owners' rights and options. RCW 35.72-.040(2). If any owner requests a public hearing within 20 days of the notice, the city must conduct a public hearing, notice of which must be given to all affected owners. RCW 35.72.040(2).

7. After conducting the public hearing, if requested, the city adopts an ordinance that is the final determination of the assessment reimbursement area and the pro rata shares of reimbursable costs. RCW 35.72.040(2).

8. The city and the owner constructing the projects then finalize and execute the assessment reimbursement contract and include the assessment reimbursement area and pro rata share of reimbursement determined by the city. RCW 35.72.040(3).

9. The assessment reimbursement contract must be recorded in the appropriate county auditor's office within 30 days of its execution. RCW 35.72.040(3).

10. Once the assessment reimbursement contract is recorded, its provisions for reimbursement are binding on owners of record within the reimbursement assessment area who were not parties to the contract. RCW 35.72-.040(4).

11. If an owner subsequently develops his or her property within the reimbursement assessment area within 15 years, and is not required to install similar street projects because the projects were already installed under the contract, then the city can require that that owner reimburse the owner who initially constructed the project, pursuant to the reimbursement share determined previously under RCW 35.72.030. RCW 35.72.020(4).

As explained above, the City did not comply with the first step of this process because it did not have an ordinance in effect requiring improvements "as a prerequisite to further property development." RCW 35.72.010.

Absent the first step, the City complied with the sequence of events as required by RCW 35.72 up to a point, but it did not complete all the steps. Step 1: Shaw and Nordevin notified the City that they wished to develop property along

South Meridian. The City granted conditional use permits that required participating in the cost of the street improvement project. Steps 2 and 3: Shaw and Nordevin began negotiating an assessment reimbursement contract. Step 4: That contract identified other properties within the assessment reimbursement area, including the reimbursement shares of those properties. Step 5: The City made a preliminary determination of reimbursement shares based on the benefit of the project to the identified properties. Step 6: The City made a preliminary determination of the boundaries of the assessment reimbursement area, and sent notices to the record owners of the parcels within the area, pursuant to ordinance 2183. Step 7: The City conducted public hearings and finalized the boundaries of the assessment reimbursement area, pursuant to ordinance 2190.

The City failed to take the next step required by RCW 35.72. Step 8 required the execution of the assessment reimbursement contracts with Shaw and Nordevin. Step 9 required recording of those contracts with the county auditor. Step 10 made the assessments binding on other property owners within the assessment reimbursement area, such as the partnerships and the third party defendants. Only at step 11, when owners of other parcels choose to develop their property within 15 years and are not required to install street improvements because the improvements already have been installed pursuant to the assessment reimbursement contract, can the City collect assessments from those other owners pursuant to the contract.

Accordingly, the trial court's reasoning for its ruling that ordinances 2183 and 2190 are invalid is incorrect. As we have noted above, however, the City did not have the authority to impose or collect assessments under ordinance 2190 because of its failure to adopt an ordinance pursuant to RCW 35.72.010. Therefore, the trial court was correct in granting summary judgment.

As summary judgment was appropriate, we need not address the partnerships' additional arguments nor those of

the third party defendants and the intervenor regarding the adequacy of the notice provided under RCW 35.72.040(2).

■ The City presents two additional arguments that it contends compel reversal of the summary judgment order. First, it argues that even if the assessments were not validly collected under assessment reimbursement contracts pursuant to RCW 35.72, they were validly collected as development fees, pursuant to ordinance 2038 and *Southwick, Inc. v. Lacey*, 58 Wn. App. 886, 890, 795 P.2d 712 (1990) (citing *Hillis Homes, Inc. v. Snohomish Cy.*, 97 Wn.2d 804, 809, 650 P.2d 193 (1982)). However, this argument was never pleaded or argued to the trial court. Therefore, it cannot be raised for the first time on appeal. *Smith v. Shannon*, 100 Wn.2d 26, 37, 666 P.2d 351 (1983).

■ Finally, the City argues that its decisions can be reviewed only under an "arbitrary and capricious standard" and that the partnerships and third party defendants did not establish that the City's enactments of ordinances 2183 and 2190 were arbitrary or capricious acts. *Thomsen v. King Cy.*, 39 Wn. App. 505, 514, 694 P.2d 40, *review denied*, 103 Wn.2d 1030 (1985). This standard of review is applicable to discretionary decisions of a legislative body. However, in taking any action, the governmental body's compliance with the applicable statutes is subject to independent judicial review. *Schmitt v. Cape George Sewer Dist. 1*, 61 Wn. App. 1, 5, 809 P.2d 217 (1991); *Washington Fed'n of State Employees v. State Personnel Bd.*, 54 Wn. App. 305, 308-09, 773 P.2d 421 (1989). The Superior Court did not err in reviewing the City's actions under an error of law standard.

Judgment affirmed.

SEINFELD, A.C.J., and PEARSON, J. Pro Tem., concur.

Reconsideration denied May 18, 1993.