[No. 12121. Department Two. May 12, 1915.]

## M. H. EGGLESTON *et al.*, *Respondents*, v. CHARLES B. SHELDON *et al.*, *Appellants.*[1]

FRAUDULENT CONVEYANCES—EVIDENCE—INDEBTEDNESS. In a suit by judgment creditors to set aside a voluntary conveyance by a judgment debtor, made prior to the rendition of judgment against him, the existence of the debt at the time of the conveyance, as against an innocent grantee, cannot be shown by the introduction in evidence of the pleadings, findings and judgment in the prior case against the judgment debtor, since the recitals therein would not be evidence as against a grantee who was a stranger to the record in such prior action.

Appeal from a judgment of the superior court for Spokane county, Jackson, J., entered February 11, 1914, in favor of the plaintiffs, in an action to subject property to a judgment, tried to the court. Reversed.

*Hurn & Hurn* and *Cannon, Ferris & Swan*, for appellants.

*Merritt, Oswald & Merritt*, for respondents.

FULLERTON, J.—In this action the respondents, who were plaintiffs below, sought to set aside a voluntary conveyance

[1]Reported in 148 Pac. 575.

of an undivided one-half interest in certain real property, made by Charles B. Sheldon to his sister, Lizzie A. Sheldon, and to subject the property to sale under a judgment recovered on December 20, 1912, in an action in which the respondents were plaintiffs and Charles B. Sheldon and one C. E. Horton were defendants.

In their complaint, the respondents alleged that the judgment against Sheldon and Horton was recovered for moneys purloined by Sheldon and Horton from the city treasury of the city of Spokane from time to time between January 1, 1905, and June 20, 1908, aggregating the sum of $4,374.05, of which sum $3,559.35 was taken prior to March 10, 1908, the date of the voluntary conveyance from Sheldon to his sister which is sought to be set aside. The complaint contained further allegations intended to show that the real property in question was subject, as the property of Charles B. Sheldon, to the lien of and sale under the judgment obtained against him by the respondents. The defendants answering jointly, admitted the recovery of the judgment set forth in the complaint and the conveyance of the real property from Sheldon to his sister at the time mentioned therein, but denied generally all the other allegations therein, and especially denied that Charles B. Sheldon was indebted to the respondents in any sum for any cause whatsoever at the time the conveyance of the real property was made. On the issue thus joined, a trial was entered upon before the court sitting without a jury. In proof of their allegations, the respondents introduced, over the objections of the appellants, the complaint, the answer, the findings of fact and conclusions of law and the judgment entry in the case of the respondents against Sheldon and Horton, but did not make, or. attempt to make, any other proofs concerning the indebtedness of Sheldon to the respondents, or either of them, at the time the conveyance complained of was made other than these documents afforded. Challenges to the sufficiency of the evidence to support a judgment were interposed by the appel-

lants at appropriate times during the trial, all of which were overruled by the trial court, the trial finally resulting in a judgment in accordance with the prayer of the complaint.

The instruments introduced by the respondents, if we are to accept their recitals as primary evidence of the matters contained in them, abundantly support the judgment entered by the court. They tend to show that the respondent Eggleston was treasurer of the city of Spokane between January 1, 1905, and June 1, 1908, and that the other respondent was the surety upon his official bond; that Sheldon and Horton were clerks under Eggleston, and had charge of the collections connected with the water department of the city. That these persons, as collections were made in that department, would enter the several items correctly in the books of the city and correctly tabulate the items on an adding machine, but that they discovered a method by which the adding machine could be manipulated so as to make it total as the sum of the several items a sum less than the actual total, and that they did so manipulate the machine, returning to the treasurer the amount of the manipulated total and keeping and appropriating to their own use the difference between the sum returned and the actual total. The amount appropriated at any particular time was never large when compared with the amount returned, and, because of their belief in the accuracy of the adding machine, the peculations were not discovered by the treasurer, or the finance committee of the city, whose duty it was from time to time to examine and approve the accounts of the several city officers; the thefts being in fact discovered by the state board of accountancy some time after the several individuals interested had been retired from office.

The documents further tended to show the truth of the allegations of the complaint as to the amount taken from the treasury prior to the making of the conveyance which is sought to be set aside. It is well to notice also that these facts appear from the recitals in documents other than the

judgment proper. The judgment merely recites that the action was tried by the court, that the court had made its findings of fact and conclusions of law therein, and orders and adjudges that the plaintiffs have and recover of and from the defendants a named sum, being the aggregate of the several peculations, with interest, as found by the court, and a certain other fixed sum taxed as costs; it contains no recitals of any nature tending to show the time of the incurrence or the nature of the debt on which it is founded.

The evidence does not disclose, and, indeed, we do not find that it is seriously contended, that the sister of Sheldon had notice or knowledge of her brother's thefts from the city at the time the deed to her was executed, or that she took the deed other than in good faith with the intent to hold the property as her own. Moreover, the testimony shows an obligation on the part of Sheldon to convey the property as he did convey it, although not of such a nature perhaps as would take the transaction from without the rule of voluntary conveyances as against the claims of existing creditors. The question then arises, were these documents—that is to say, the complaint, answer, findings of fact and conclusions of law, and judgment (entered December 20, 1912) in the case wherein the present respondents were plaintiffs and Charles B. Sheldon and C. E. Horton were defendants—competent evidence against the appellant Lizzie A. Sheldon of an indebtedness owing by Charles B. Sheldon to the respondents on March 10, 1908, the date of the conveyance sought to be set aside?

The authorities generally hold that, in an action by a judgment creditor to set aside as fraudulent a conveyance of real property from the judgment debtor to his grantee, the judgment is conclusive evidence between the judgment creditor and the judgment debtor of an indebtedness existing at the date of the judgment, and *prima facie* evidence of the same fact as between the judgment creditor and the grantee of the judgment debtor. Some of the cases also hold that

the record of the cause, made preceding the judgment, may be examined to ascertain as between the judgment creditor and the judgment debtor the time when the obligation arose which gave rise to the judgment. But in so far as the cases have been called to our attention, they hold with practical uniformity that such record, as between the judgment creditor and the grantee of the judgment debtor, is secondary evidence, incompetent, if seasonably objected to, to prove the facts therein recited.

In *Hartman v. Weiland*, 36 Minn. 223, 30 N. W. 815, the plaintiff Andrew Hartman sued Weiland, as sheriff, to recover the value of certain grain alleged to have been taken from his possession by the sheriff under a writ of execution on a judgment in favor of one Nicolin and against one Anton Hartman. The answer set up an indebtedness from Anton Hartman to Nicolin existing at a given date, and alleged further that the grain had been grown on a farm belonging to Anton Hartman, which on the date given, Anton had conveyed, for the purpose of defrauding his creditors, to the plaintiff Andrew Hartman, further alleging that the indebtedness had been reduced to a judgment at a date later than the alleged fraudulent conveyance. At the trial, the sheriff introduced in evidence the judgment roll in the suit of Nicolin against Anton Hartman, the recitals in which showed an indebtedness from Anton Hartman to Nicolin existing prior to the alleged fraudulent conveyance, but tendered no other proofs of the fact. The jury found for the sheriff, a new trial was granted, and the sheriff appealed. The appellate court sustained the order of the trial court, assigning as one of the reasons therefor the following:

"There was no proof that Anton Hartman, the grantor in the conveyance claimed to have been fraudulent, and defendant in the attachment suit, was indebted to the plaintiff in that suit at the time of the conveyance. The judgment in that suit was, as against this plaintiff, who was a stranger to it, evidence only of the fact of its existence. It was no

evidence, as against him, of the previous existence of the facts on which it was based."

In *Bloom v. Moy*, 43 Minn. 397, 45 N. W. 715, 19 Am. St. 243, speaking to the same question, the court used this language:

"When a judgment creditor, or one claiming through the judgment, brings an action to set aside, as fraudulent as to creditors, a conveyance of real estate by the judgment debtor prior to the judgment, he must show that the debt for which the judgment was rendered existed at the time of the conveyance. The judgment does not, as against strangers to it, prove the antecedent existence of the debt for which it was rendered."

Explaining its holdings in the later case of *Pabst Brewing Co. v. Jensen*, 68 Minn. 293, 71 N. W. 384, the court said:

"It is urged by appellant's counsel that the court erred in finding as a conclusion of law from the facts that the judgment alone was sufficient evidence of Wagner's indebtedness to Pierce as against the plaintiff mortgagee. The rule is well settled that a judgment, *in personam*, at least, of a court of competent jurisdiction, may be offered in evidence in a subsequent suit as evidence of its own existence, and of its legal effects, to prove which it is admissible for and against strangers, as well as for and against parties and privies. Of course, it may be impeached for fraud and collusion, and perhaps on other grounds, but nothing of that character was suggested as to the judgment in question.

"Counsel insist that the law upon this subject is settled in consonance with their views in *Bloom v. Moy*, 43 Minn. 397, 45 N. W. 715, and the cases there cited; but in this counsel are clearly wrong. Those cases are in line with a vast preponderance of the authorities elsewhere to the effect that a judgment creditor suing to set aside, as fraudulent as to creditors, a conveyance by the judgment debtor prior to the judgment, must prove the existence of the debt on which it was rendered at the time of the conveyance, and that, as against the grantee, the judgment does not prove it. Or, putting it in the language used in *Hartman v. Weiland*, 36 Minn. 223, 30 N. W. 815, as against a stranger to it, a

judgment is no evidence of the prior existence of the debt for which it was rendered."

See from the same court: *Braley v. Byrnes,* 20 Minn. 435; *County of Olmsted v. Barber,* 31 Minn. 256, 17 N. W. 473, 944; *Hoerr v. Meihofer,* 77 Minn. 228; 79 N. W. 964, 77 Am. St. 674.

*Lawson v. Alabama Warehouse Co.,* 73 Ala. 289, was a bill in equity to set aside a mortgage as having been made for the purpose of hindering, delaying, and defrauding creditors. In the trial of the suit, the complainant introduced in evidence "a transcript from the Circuit Court of Pike county of the record and proceedings" of a suit brought by the complainants against the maker of the alleged fraudulent mortgage, founded upon a promissory note antedating the date of the mortgage and a judgment entered in the action subsequent to that date. On appeal, the court held the judgment record insufficient to show a debt existing prior to the execution of the mortgage, the court saying:

"The statute of frauds avoids gifts or conveyances only as to creditors or purchasers—the only persons whose rights are interfered with, and who can from them sustain legal injury. Between the parties and their privies, they are valid, and have the same operation and effect, as if they were ·untainted with a covinous intent, and founded on an adequate valuable consideration. Strangers have no right or interest in questioning, and are not permitted to impeach them. The primary fact, of consequence, when a party claiming to be a creditor avers a gift or conveyance, to be in fraud of his rights, is the existence of a debt, to the payment of which the property conveyed could be subjected, if the gift or conveyance did not stand in the way, obstructing legal remedies. The parties claiming under the gift or conveyance may dispute the existence of the debt, may require it to be proved, and may prefer against it any defense, not merely personal, which the debtor could have preferred in an independent suit upon it.   .   .   .

"While, as owner, it is an incident of his power to make such disposition of his property as he may choose, if the limitations the law imposes on the power are not offended, so in

the creation of debts, in establishing between himself and others the relation of debtor and creditor, the debtor is accountable to no one unless he acts *mala fide.* . . . Therefore, a judgment against the donor, or grantor, whether rendered prior, or subsequent to the gift or conveyance, is competent evidence of the debt, of the fact that the party in whose favor it was rendered, stands in a relation to be injured and affected by the gift or conveyance. When rendered by a court of competent jurisdiction, in the regular course of judicial proceedings, in the absence of fraud or collusion, it is conclusive evidence of a debt existing at the time of its rendition. . . . It is not evidence of an indebtedness existing at any time anterior to its rendition; and if the conveyance is impeached as merely voluntary, as wanting only in a valuable consideration, if the time of rendition is subsequent to the conveyance, there must be other evidence than the judgment affords to show the existence of the debt when the conveyance was made."

In *Yeend v. Weeks,* 104 Ala. 331, 16 South. 165, 53 Am. St. 50, this language was used:

"Where a judgment is rendered by a court of competent jurisdiction in the regular course of judicial proceeding, without fraud or collusion, it is conclusive evidence of the amount and existence of a debt at the time of its rendition, and that, in a proceeding by the plaintiff against the defendant and his grantee, to set aside an alleged fraudulent conveyance, such judgment whether rendered prior or subsequent to the conveyance, is competent evidence of the debt, and that the plaintiff therein stands in a relation to be affected or injured by the conveyance. As was said in *Lawson v. Ala. Warehouse Co.,* 73 Ala. 293, 'It is not evidence of an indebtedness existing at any time anterior to its rendition; and if the conveyance is impeached as *merely voluntary,* as wanting in a valuable consideration, if the time of rendition is subsequent to the conveyance, there must be other evidence than the judgment affords, to show the existence of the debt, when the conveyance was made.'

"If then there is no more proof than the judgment itself—in the absence of fraud or collusion, as we have seen—it is evidence of the existence of a debt at the time of its rendition, and only at that time. This is sufficient to entitle the judg-

ment creditor to impeach the fraudulent conveyance as tainted with actual fraud. In such case, the burden of proving the actual fraud would be upon the complainant. If the complainant, however, would use the judgment to the prejudice of a grantee in a deed alleged to be only voluntary and constructively fraudulent, there must be independent, distinct evidence of facts showing the cause of action which authorized the rendition of the judgment, and that it is older than the conveyance."

*Homestead Mining Co. v. Reynolds*, 30 Colo. 330, 70 Pac. 422, was an action to have cancelled as fraudulent certain deeds to real property which the plaintiff had sold under execution as the property of the grantor of the defendants. To substantiate his claim, the plaintiff introduced in evidence the judgment and record in the case under which the property was sold. The court on appeal held this insufficient to establish the fact that the plaintiff was a creditor of the grantor at the time of the conveyances. In the course of the opinion, it was said:

"But the case is fatally defective in the entire absence of proof that the plaintiff was a creditor of Wall and Pursel at the time the conveyances were made. The only evidence which plaintiff claims was responsive to that issue consisted in the production of the notes in controversy without establishing their execution, and the judgment and pleadings and records in the case of *Reynolds v. Wall and Pursel* under the judgment in which the sale took place. The defendant mining company was not a party or a privy to that suit, and is not bound by it. The judgment entry is evidence, possibly, that the indebtedness existed at the time of the institution of that action, certainly at the time of the rendition of the judgment. But as against a stranger it is not evidence of an indebtedness anterior to such time. The plaintiff should have gone farther and shown by competent proof the existence at the time of the conveyances of the indebtedness which was merged into the judgment."

In *Arnett v. Coffey*, 1 Colo. App. 34, 27 Pac. 614, Coffey, as plaintiff, brought an action against Arnett and wife to cancel sundry conveyances which apparently vested the title to

the described property in the wife.  The bill set up that Coffey had obtained judgment against Arnett at a date subsequent to the conveyances, but on an indebtedness existing prior to that time.  At the trial, the only evidence offered as to the time when the indebtedness put into judgment was incurred was the record in that suit.  The decree of the trial court vacated the several conveyances, and directed that the property conveyed be subjected to the payment of Coffey's judgment.  The court of appeals reversed the judgment, using this language:

"It is universally agreed, that as against existing creditors, a debtor may not make a voluntary conveyance.  To bring the case within this well recognized principle it must be shown by both allegation and proof that the debt to which the property is said to be subject existed at the time of the conveyance, unless there be present an intention to defraud creditors, whose rights are shortly expected to arise, and whose rights may thereafter supervene. *Wilcoxen v. Morgan*, 2 Colo. 473; *Sexton v. Wheaton*, 8 Wheat. 229; *Jackson v. Jackson*, 91 U. S. 122.

"As against Anthony Arnett it is tolerably clear that Coffey's claim did exist prior to the time of the several conveyances which he made.  While no evidence whatever was offered upon that subject, other than what may be drawn from the record of the case of *Coffey v. Arnett*, as against him, this seems to be ample for the purpose.  In that suit an issue was fairly tendered as to the time and manner in which Arnett acquired the title to Coffey's one-twelfth interest in the lode.  From the verdict in that case it must be assumed that Arnett took the title in trust and under an obligation to reconvey when he received the government patent.  This obligation existed in 1873, prior to the date of the various conveyances which he made.  In cases where the judgment is silent as to the issue upon which it was rendered, it is entirely competent to resort to the pleadings for the purpose of determining what issue was tendered, and which may be said to be conclusively settled by the judgment. *Hinde's Lessee v. Longworth*, 11 Wheat. 199.

"This does not enable the plaintiff to recover.  In the absence of any other proof than what is furnished by this judg-

ment and the pleadings the complainant, as against Mrs. Arnett, still remains a subsequent creditor. According to his own allegations the various deeds from Mr. Arnett, and the mesne conveyances which vested the title in Mrs. Arnett all antedated the judgment; and while the pleadings in that suit may, as against Arnett, demonstrate that the plaintiff was a creditor prior to these various transfers, they do not now avail as against the wife who was not a party to the record. When, therefore, it appeared from the plaintiff's own proof that Mrs. Arnett acquired title many years prior to the rendition of judgment, he was bound to show as against her, by competent testimony, that he was a creditor before the date on which she acquired title. *Miller etc. v. Johnson et al.*, 27 Md. 6."

Other cases supporting the rule are: *Springer v. Bigford*, 160 Ill. 495, 43 N. E. 751; *Juilliard & Co. v. May*, 130 Ill. 87, 22 N. E. 477; *Yost Mfg. Co. v. Alton*, 168 Ill. 564, 48 N. E. 175.

The cases of *Jamison v. Bagot*, 106 Mo. 240, 16 S. W. 697; *Goodnow v. Smith*, 97 Mass. 69, and *Hinde's Lessee v. Longworth*, 11 Wheat. 199, have been cited as taking a view contrary to the foregoing cases. But, as we understand them, they do not go to that extent. The case from the supreme court of Missouri clearly does not do so. When the record was offered in that case a general objection to its admission was made, but no specific objection that it was not admissible to prove an indebtedness prior to the rendition of the judgment. The court held that the judgment, being admissible for the purpose of showing an indebtedness at the time of its rendition, the date of the commencement of the action, and that certain facts were alleged to exist, was not subject to the general objection, and the parties could not be heard afterwards to object that it was not admissible for the specific purpose. Passing upon the question, the court said (p. 255):

"But plaintiffs go further in their contention, and claim that these documents not only prove the pendency of the suit, and that certain facts were alleged to exist, but also

that the facts alleged did exist. These documents were offered as evidence generally. If defendants had made the specific objection that they were not competent to prove the facts alleged in them, it seems that by the generally recognized rule they ought not to have been admitted for that purpose."

In the case from Massachusetts, the opinion in full is as follows:

"The plaintiff claimed the property in question by virtue of a sale from one Risley. The defendant took it by virtue of an attachment on a writ in favor of one Hall, who alleged that he was a creditor of Risley, and that the sale was fraudulent and void as to creditors. The judgment obtained in the action was pertinent evidence tending to prove that Hall was a creditor of Risley, and that therefore the defendant had a right to hold the property attached, and apply it on Hall's execution, if the sale to the plaintiff should appear to be fraudulent. But the plaintiff objects to the admissibility of the evidence in this action, because as to him the judgment was *res inter alios*. But if this objection were valid, it would apply with equal force to any other evidence of transactions between Hall and Risley, and so it would be impossible to prove that Hall was Risley's creditor. It would also apply to the sale by Risley to the plaintiff, which was *res inter alios* as to the defendant and Hall. But, from the necessity of the case, each party must prove his transactions with Risley in order to establish his right to contest the title of the other party to the property. The judge ruled correctly that the judgment was competent to be considered with the other evidence for the purpose of showing a debt due from Risley to Hall at the time of the sale. See *Russ v. Butterfield*, 6 Cush. 242; *Williams v. Babbitt*, 14 Gray 141. Of course, it would be necessary to prove further that the cause of the action existed at the time of the sale, but this does not affect the question before us."

This case, also, we think, militates against, rather than supports, the respondents' position. The court holds, as we interpret it, that the judgment is evidence of an indebtedness from the judgment debtor to the judgment creditor at the time of its rendition, but, because rendered subsequent to the sale sought to be set aside, other evidence was necessary to

show that the cause of action on which it was founded existed at that time.

The case of *Hinde's Lessee v. Longworth,* is more to the point, but even in that case it would seem that the record was held admissible to prove an indebtedness existing prior to the judgment, rather from lack of specific objection than that it was in itself primary evidence of the fact.

The rule announced in the foregoing cases would seem to be sound in principle. A voluntary conveyance of property, made in good faith, is valid as between the parties, and valid as to all persons other than existing creditors of the grantor. Since the grantee of the property acquires an interest therein by reason of the conveyance, such grantee is a necessary and indispensable party to any proceeding brought to subject the property to the debt. As to him it must be alleged, and, if the allegation be denied, it must be proven, that the debt existed at the time of the conveyance. This fact can only be proven by primary evidence; "the best evidence of which the case in its nature is susceptible." The recitals of fact contained in the pleadings, findings and other documents in a cause anterior to a judgment are not primary evidence as against a stranger to the record. However conclusive such findings and recitals may be as against parties and privies to the action, they are but secondary evidence as to strangers. If the facts so recited become material in a proceeding in which they are parties, such facts as to them must be proven from the original sources of evidence, the same sources that were required to establish the facts in the first instance between the parties to the original suit.

So here, since the voluntary conveyance attacked was made in good faith, the grantee in the conveyance, not having been a party to the original action, is not bound by the record therein, and the production of such record does not prove as to her that an indebtedness existed between her grantor and the judgment creditor prior to the entry of the judgment in that action.

It follows that the judgment must be reversed, and the cause remanded with instructions to enter a judgment for the defendants. It is so ordered.

MAIN, ELLIS, and CROW, JJ., concur.