FILED
COURT OF APPEALS
DIVISION II

2015 MAY 27 AM 9: 35

STATE OF WASHINGTON
BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| SHELCON CONSTRUCTION GROUP, LLC, a Washington limited liability company, | No. 46235-4-II |
| Respondent, | |
| v. | |
| SCOTT M. HAYMOND and JANE DOE HAYMOND, husband and wife; DARRA ODENWALDER, trustee for The Darra Marie Haymond Living Trust, | |
| Appellants, | |
| A-3 VENTURE LLC, a Washington limited liability company; A-4 VENTURE, an unknown entity type; A-1111 VENTURE LLC, a Washington limited liability company; 14224 PIONEER LIVING TRUST; and ANCHOR MUTUAL SAVINGS BANK, | UNPUBLISHED OPINION |
| Defendants. | |

WORSWICK, P.J. — Scott Haymond and Darra Odenwalder appeal the trial court's order issued under the Uniform Fraudulent Transfers Act (UFTA), chapter 19.40 RCW, avoiding Haymond's transfers of property to Odenwalder as trustee of a trust. Odenwalder argues that (1) Odenwalder and the trust were necessary parties to the action, and the trial court lacked jurisdiction by not joining them; (2) Shelcon Construction Group failed to properly bring an action under the UFTA, chapter 19.40 RCW before seeking its relief; (3) the statute of limitations had run on Shelcon's claims; and (4) the subject property was improperly attached. Haymond argues that the trial court erred by avoiding the transfers because (5) Shelcon failed to

prove all of the elements of fraud before avoiding the transfers, and (6) the trial court took no testimony on the issue. We reverse the order and remand to the trial court for an evidentiary hearing to determine several disputed factual issues and to resolve whether the statute of limitations has run on Shelcon's fraudulent transfer claim regarding the club membership. We reverse the avoidance of the transfer of the house, because the statute of limitations has run.

## FACTS

On October 28, 2011, Shelcon obtained a judgment and decree of foreclosure against Scott Haymond. We affirmed that judgment separately in *Shelcon v. Haymond, et al.*, No. 42845-8-II (Wash. Ct. App. May __, 2014) (consolidated with No. 44995-1-II). This appeal concerns the trial court's order in a postjudgment motion by Shelcon, whereby the trial court avoided two transfers of property as described below.

Scott Haymond lived at a residence located at the East End Lake Tapps Rod & Gun Club (the club). Haymond owned the residence, but the club owned the underlying land. Haymond also owned a membership interest in the club. Darra Odenwalder is Scott Haymond's sister.

Haymond and Odenwalder created the Darra M. Haymond[1] Living Trust (the trust) on April 6, 2006, naming Odenwalder as trustor and trustee. Scott Haymond's daughter was the trust's sole beneficiary. On the same day, Haymond transferred his residence and his membership in the club to "Darra Marie Haymond Trustee of the Darra M. Haymond Living

---

[1] Darra M. Haymond is the same person as Darra Odenwalder. "Haymond" appears to be Odenwalder's maiden name. Darra Odenwalder is Scott Haymond's sister. The record does not explain why she is sometimes referred to as "Darra Haymond," or why the trust bears that name.

Trust."[2] CP at 76. The bill of sale shows no monetary consideration for the transfer; instead, Haymond transferred the house and club membership in consideration of "WAC-458-61-375 CHANGE OF IDENTITY the receipt of which is acknowledged."[3] Clerk's Papers (CP) at 76. Haymond owned and transferred his residence as a building only; he did not own the underlying land. Instead, the club owned the land upon which the house stood. This transfer was not recorded.

On November 14, 2008, Haymond executed an identical transfer.[4] This transfer was recorded with the Pierce County Auditor. Haymond claimed this second transfer was an attempt to give public notice of the transfer. Again, this transfer included Haymond's personal residence at the club (but not the underlying land), and Haymond's club membership.

After the transfer of his residence, Haymond continued to live alone at the residence most of the time. Odenwalder and Haymond both paid for certain bills relating to the transferred residence and club membership. The trust did not have a bank account. Odenwalder paid

---

[2] This wording is ambiguous regarding whether Haymond transferred the property to Odenwalder personally or to the trust. Due to ambiguities in the record and in the briefing, we assume both Odenwalder and the trust have potential property interests in the transfers.

[3] This Department of Revenue provision, repealed effective December 2005, exempted real estate transfers from tax liability where they were merely a change in form or identity within a family corporation. Former WAC 458-61-375 (1994) (replaced by WAC 458-61A-211). This provision is now found at WAC 458-61A-211; it provides that a transfer involving a trust, among other entities, where "no change in beneficial ownership has occurred," is exempt from tax liability.

[4] Like the 2006 transfer, the 2008 Bill of Sale transferred Haymond's residence and his club membership to "DARRA MARIE ODENWALDER TRUSTEE OF THE DARRA M. ODENWALDER LIVING TRUST" for no apparent monetary consideration but "in consideration of WAC-458-61-375 CHANGE OF IDENTITY the receipt of which is acknowledged." CP at 169.

property taxes and insurance on the residence on October 21, 2010. But Haymond paid for club membership dues up until March 13, 2012. Haymond reimbursed Odenwalder for any bill payments made for the residence, such as utilities and insurance. Odenwalder thought Haymond structured the payments this way so that he would not appear as the payor.

Regarding the transfer of the club membership, the club's former president declared that the club's rules provided that a transferee of a club membership must obtain approval from the club's Board of Directors before being admitted as a member. But the club's bylaws in the record before us do not contain such a restriction. In December 2011, Haymond showed the club president one of the bills of sale. Haymond requested that the president backdate the effective date of the club membership and residence transfers "by several years," but the president refused. CP at 187. Haymond paid all club membership dues from 2002 until March 2012, when the club approved Odenwalder as a new member. In March 2012, Odenwalder personally became a member; the trust was never a member.

Odenwalder stated in a deposition on August 27, 2012, that she thought the trust was created to benefit Haymond's daughter, to ensure that the house would not be taken from her. Odenwalder recalled that Haymond had wanted to guard against future legal or financial troubles.

On December 31, 2009, Shelcon sued Haymond. On October 28, 2011, the trial court issued a judgment in Shelcon's favor. The judgment of $553,849.77 was entered jointly and severally against Haymond and one of his business entities, A-1111 Venture, LLC. Shelcon's lawsuit named neither Odenwalder nor the trust as defendants.

On February 20, 2014, nearly two and a half years after obtaining the judgment, Shelcon initiated a supplemental proceeding to execute its judgment against Haymond. Shelcon filed a motion under the same cause number as its judgment against Haymond, asking the trial court to avoid Haymond's transfers of (1) his membership in the club and (2) his personal residence. Shelcon made this motion under the UFTA, RCW 19.40.041. Shelcon claimed that Haymond had transferred the club membership to Odenwalder personally on March 12, 2012, and that he transferred his personal residence to the trust on April 6, 2006.

On January 28, 2014, the trial court ordered Odenwalder to show cause why the transfers should not be avoided. On March 14, 2014, the trial court conducted a show cause hearing based on written submissions, where Odenwalder argued that (1) the trial court had no jurisdiction over her or the trust assets, (2) Shelcon's claimed relief was time-barred because it was not sought within four years of the challenged transfers, (3) Shelcon failed to properly initiate an action for relief under chapter 19.40 RCW, and (4) the trial court could not attach the trust's property without making Odenwalder or the trust parties.

Haymond's declaration in opposition to the motion to avoid the transfers stated that his financial condition around the April 6, 2006 transfer date was "excellent. I was fully solvent and in great financial condition." CP at 221. He supported this assertion with bank records from the last few months of 2008. Haymond further declared that he created the trust for his daughter "to provide for her college by conveying the Lake Tapps property to my sister as trustee for her in case something happened to me. I had no idea that the real estate market would crash so steeply and endanger my estate." CP at 221-22. He stated that he did not have financial problems until 2011. He recalled that he asked to backdate the transfers with the club because "I had recorded

5

the transfer and wanted the club to accept the trustee in accordance with the actual date of transfer." CP at 222. Finally, Haymond declared that he continued to live in the house because his daughter could not live there alone and club rules forbade renting houses out.

On March 14, 2014, the trial court granted Shelcon's motion, deciding the case on the submitted written materials. The trial court avoided both transfers "to the extent necessary to satisfy the judgment of Shelcon Construction Group, LLC against Scott M. Haymond." CP at 234-35. Regarding the residence, the trial court avoided the transfer "to either Darra M. Odenwalder or to Darra M. Odenwalder as trustee for the Darra M. Haymond Living Trust." CP at 234-35. Haymond and Odenwalder each moved for reconsideration, and the trial court denied both motions. Haymond and Odenwalder appeal.

## ANALYSIS

### I. STANDARD OF REVIEW

We review summary proceedings based purely on written documents de novo. *Foster v. Gilliam*, 165 Wn. App. 33, 54, 268 P.3d 945 (2011). We also review issues of statutory interpretation de novo. *State, Dep't of Ecology v. Campbell & Gwinn*, 146 Wn.2d 1, 9, 43 P.3d 4 (2002). When interpreting a statute, we seek to ascertain the legislature's intent. 146 Wn.2d at 9-10. Where the meaning is plain on the statute's face, we give effect to that meaning as expressing the legislature's intent. 146 Wn.2d at 9-10.

### II. ODENWALDER'S STATUS AS AN AGGRIEVED PARTY

As a threshold matter, Shelcon argues that Odenwalder cannot seek review because she is not an aggrieved party. We disagree.

No. 46235-4-II

RAP 3.1 provides that "[o]nly an aggrieved party may seek review by the appellate court." Generally, appellants must be parties to the case. *Aguirre v. AT & T Wireless Servs.*, 109 Wn. App. 80, 85, 33 P.3d 1110 (2001). But "[i]n rare cases, a person who is not formally a party to a case may have standing to appeal a trial court's order because the order directly impacts that person's legally protected interests." *Polygon Nw. Co. v. Am. Nat. Fire Ins. Co.*, 143 Wn. App. 753, 768, 189 P.3d 777 (2008).

Here, the trial court's order avoiding Haymond's transfers directly impacts the property of Odenwalder and the trust. Thus, Odenwalder and the trust are aggrieved parties under RAP 3.1. and Shelcon's argument fails.

## II. TRIAL COURT'S JURISDICTION OVER ODENWALDER AND THE TRUST

Odenwalder argues that the trial court lacked jurisdiction over her and the trust by not joining her as a necessary party. We disagree. [5,6]

CR 19(a) provides that a person "shall" be joined if he "claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may . . . as a practical matter impair or impede his ability to protect that interest." A transferee of an

_____

[5] Odenwalder also argues that the trial court's order violated her due process rights. "Procedural due process requires that an individual have notice and an opportunity to be heard before he can be deprived of an established property right." *Veradale Valley Citizens' Planning Comm. v. Bd. of Cnty. Comm'rs of Spokane Cnty.*, 22 Wn. App. 229, 232, 588 P.2d 750 (1978). Because we remand the trial court's order on the basis of the statute of limitations, we do not reach the issue of whether Odenwalder's due process rights were violated.

[6] Odenwalder further argues that she was a necessary party under the Uniform Declaratory Judgments Act, chapter 7.24 RCW. Shelcon moved for avoidance of the transfers under chapter 19.40 RCW, and did not seek declaratory judgment. The trial court's order merely avoided the transfers and did not grant declaratory judgment to Shelcon. Thus, we do not consider this argument.

7

allegedly fraudulent transfer is a necessary party to an action to avoid that transfer. *In re Schneider*, 99 B.R. 52, 56 (Bankr. W.D. Wash. 1989); *Eggleston v. Sheldon*, 85 Wash. 422, 434, 148 P. 575 (1915); *Junkin v. Anderson*, 12 Wn.2d 58, 67, 120 P.2d 548 (1941); *see also Nastro v. D'Onofrio*, 263 F. Supp. 2d 446, 450 (D. Conn. 2003); *Tanaka v. Nagata*, 76 Haw. 32, 36, 868 P.2d 450 (1994) (agreeing with numerous cited authorities and holding "where a creditor alleges a fraudulent transfer of property from a judgment debtor to a transferee who retains title to the subject property or who claims an interest in the property or its proceeds, the transferee is a necessary party to any action seeking to set aside the transfer").

RCW 6.32.270 provides a procedure by which a trial court can adjudicate disputes such as this one, where a judgment creditor and a third party contest a judgment debtor's property in a supplemental proceeding. The statute reads, in relevant part:

> In any supplemental proceeding, where it appears to the court that a judgment debtor may have an interest in or title to any real property, and such interest or title is disclaimed by the judgment debtor or disputed by another person, . . . the court may, if the person or persons claiming adversely be a party to the proceeding, adjudicate the respective interests of the parties in such real or personal property, and may determine such property to be wholly or in part the property of the judgment debtor. If the person claiming adversely to the judgment debtor be not a party to the proceeding, the court *shall by show cause order or otherwise cause such person to be brought in and made a party thereto.*

RCW 6.32.270 (emphasis added).

By its plain terms, RCW 6.32.270 provides that in a supplemental proceeding, a trial court may adjudicate a judgment debtor's disputed rights in property against the rights of a person claiming the property adversely to the debtor. The statute further provides that an order to show cause served on a nonparty is sufficient to make that person a party in a dispute over a judgment debtor's property. RCW 6.32.270. Thus, a show cause order suffices to make a

person claiming adversely to the judgment creditor a party to a supplemental proceeding, and the trial court may determine a judgment debtor's disputed property rights in such a proceeding.

Our Supreme Court held in *Junkin v. Anderson* that the predecessor to RCW 6.32.270[7] authorized the trial court to adjudicate disputes even among those who were not full "parties." 12 Wn.2d at 71. The court wrote that it would be "irrational" to require the third party to be made a plaintiff or defendant, because RCW 6.32.270 was designed to resolve property disputes even where the third-party claimant was not before the trial court. *Junkin*, 12 Wn.2d at 71. The court held that the statute allowed a trial court to adjudicate property disputes by show cause order or "otherwise," including through constructive service upon a nonresident. 12 Wn.2d at 71. Thus, the Supreme Court held that this statute provides broad powers for the trial court to bring in nonparties and make them "parties" to a supplemental proceeding through show cause orders or other procedures, even where they are not plaintiffs or defendants.

Here, Odenwalder and the trust were necessary parties.[8] But, under RCW 6.32.270, the trial court's show cause order made Odenwalder and the trust parties to this supplemental proceeding.[9] Therefore, the trial court did not fail to join necessary parties; it sufficiently did so by ordering Odenwalder and the trust to show cause why the transfers should not be avoided.

---

[7] REM. REV. STAT. § 638–1. The language of RCW 6.32.270 is identical to § 638–1.

[8] Due to ambiguities in the record and in the briefing, we analyze this issue as if both Odenwalder and the trust have potential property interests in the transfers.

[9] Odenwalder concedes she was served with the show cause order.

IV. ACTION PROPERLY COMMENCED

Odenwalder argues that Shelcon had no proper cause of action, because it did not file a separate action under RCW 19.40.071. We disagree.

The UFTA, chapter 19.40 RCW, provides two paths for a creditor to obtain relief from a fraudulent transfer. RCW 19.40.071. The statute provides that creditors without a judgment against a debtor may obtain relief under 19.40.071(a), which provides several remedies. The statute provides that those remedies will be available in an "action for relief . . . under this chapter." RCW 19.40.071(a); *see also Schneider*, 99 B.R. at 55 (noting that the UFTA "does not specifically state that one must commence an action to set aside the fraudulent conveyance). But creditors may alternatively seek relief under RCW 19.40.071(b), which permits creditors who have "obtained a judgment on a claim against the debtor" to "levy execution on the asset transferred or its proceeds." If the creditor seeks this form of relief, it need not file a separate action under the UFTA, chapter 19.40 RCW.

Here, Shelcon had obtained judgment against Haymond. Shelcon then instituted supplemental proceedings to levy execution on its judgment. The statute plainly contemplates that a creditor will invoke the UFTA after obtaining a judgment on some other basis, and provides a remedy in that event. RCW 19.40.071(b). Requiring a separate lawsuit in such circumstances would do nothing more than unnecessarily tax judicial resources. We disagree with Odenwalder, and hold that filing a motion to avoid Haymond's transfers in supplemental proceedings was an appropriate way for Shelcon to levy execution on its judgment.

10

No. 46235-4-II

V. STATUTE OF LIMITATIONS VIOLATED

Odenwalder argues that the statute of limitations has run on Shelcon's claim to avoid the transfer of Haymond's residence and club membership. We agree that the statute of limitations has run on the transfer of the residence and that an issue of material fact remains regarding transfer of the club membership. Thus, we reverse the order avoiding the transfers and remand to the trial court to resolve this issue.

The UFTA, RCW 19.40.091, provides two statutes of limitations. It provides a four-year statute of limitations for a plaintiff to bring an action under RCW 19.40.041(a)(1) (pleading actual intent to hinder, delay, or defraud). Alternatively, it provides a one-year statute of limitations after the claimant discovered or reasonably could have discovered the fraudulent nature of the transfer. RCW 19.40.091(a); *Freitag v. McGhie*, 133 Wn.2d 816, 820, 824, 947 P.2d 1186 (1997).

As a threshold matter, we hold that the relevant end date for statute of limitations purposes is when Shelcon moved to avoid the transfers, not when Shelcon initially sued Haymond in the underlying case. RCW 19.40.091 provides: "A cause of action with respect to a fraudulent transfer or obligation under this chapter is extinguished unless action is brought . . . [u]nder" the various sections providing relief in the UFTA within the allowed time. As stated above, we give effect to the plain meaning of a statute when possible. *Campbell & Gwinn*, 146 Wn.2d at 9-10. The terms "action" and "cause of action" are not explicitly defined in the UFTA. *Black's Law Dictionary* defines "action" as any civil or criminal judicial proceeding. BLACK'S LAW DICTIONARY 32 (9th ed. 2009). It defines "cause of action" as a "group of operative facts giving rise to one or more bases for suing." BLACK'S LAW DICTIONARY 251 (9th ed. 2009).

11

Therefore, an "action" is the legal proceeding, whereas a "cause of action" is the group of facts underpinning that legal proceeding.

The meaning of RCW 19.40.091 is plain on the statute's face, so we give effect to that meaning. *Campbell & Gwinn*, 146 Wn.2d at 9-10. The statute provides that a "cause of action . . . under this chapter is extinguished unless action is brought" under the chapter within the statute of limitations. RCW 19.40.091. Here, the "cause of action" is the set of facts arguably demonstrating a fraudulent transfer; the "action" that must be brought is the legal proceeding to set aside the fraudulent transfers. This plain language demonstrates that the relevant "action" here is the postjudgment motion to avoid the transfers, not the underlying suit in which Shelcon prevailed. The legal proceeding, or "action," the statute refers to is an action *under the UFTA*. The statute plainly requires a creditor to seek relief under the UFTA within the UFTA's statute of limitations. Therefore, because Shelcon sought the UFTA's relief, we look to the date on which Shelcon moved to avoid the transfers under the UFTA for statute of limitations purposes. To be timely, Shelcon's motion to avoid the transfers in February 2014 must have occurred either within four years of the transfers, or within one year of Shelcon's discovery of their fraudulent nature.

Here, the relevant dates are:

- April 6, 2006: Haymond executed a bill of sale transferring his house and his club membership to Odenwalder as trustee. CP at 76.
- November 14, 2008: Haymond executed an identical transfer and recorded the transfer. CP at 169.
- December 2011: Haymond requested that the club backdate the transfer date. CP at 187.
- March 12, 2012: the club allowed Odenwalder to become a member. CP at 186.
- August 27, 2012: Shelcon deposed Odenwalder about the transfers. CP at 10.
- February 20, 2014: Shelcon moved to avoid these transfers. CP at 1.

If the statute of limitations began to run in 2006 or 2008 when Haymond executed the bills of sale, the four year statute of limitations would have expired in 2010 or 2012. Under either scenario, the four-year statute of limitations under RCW 19.40.091(a) would have expired prior to Shelcon's 2014 motion to avoid the transfers. The one-year statute of limitations does not rescue the claim. Shelcon does not provide any facts about its discovery of this arguable fraud. But the record is clear that when Shelcon deposed Odenwalder in August 2012, Shelcon questioned Odenwalder about the nature of the trust's assets, and she said she thought Haymond made the transfers to protect his assets from legal and financial troubles for the benefit of his daughter. At this point, Shelcon knew or reasonably should have known of the arguably fraudulent nature of both transfers. Therefore, the one-year statute of limitations would have expired, at the very latest, in August 2013, one year after Odenwalder's deposition.

A.    *Statute of Limitations Ran on Transfer of House*

At oral argument before us, Shelcon conceded that the statute of limitations had expired on the transfer of the house before Shelcon sought to avoid these transfers. Wash. Court of Appeals oral argument, *Shelcon v. Haymond*, No. 46235-4-II (Jan. 20, 2015), at 16 min, 2 sec. through 16 min, 10 sec. (on file with court). We accept this concession, because uncontroverted evidence before us establishes that Haymond transferred his residence in 2006, more than four years before Shelcon moved to avoid the transfer in 2014.

B.    *Questions of Fact Remain About Transfer of Club Membership*

The parties disagree about the date of the transfer of the club membership. Shelcon argues that the club membership was transferred on March 12, 2012 when the club's board of directors approved Odenwalder as a new member, whereas Odenwalder argues that it was

13

transferred in 2006 when Haymond created the first "Bill of Sale." CP at 76. The declaration from the former club president supports the contention that the transfer occurred in 2012 when the board approved Odenwalder as a new member: he declared that no one could become a club member without first being approved by the board of directors. But the club bylaws do not contain any such rule. Therefore, there remains a question of fact as to whether the club rules permitted Haymond to transfer his club membership before the board approved the new member. If the club required Board approval before allowing a member to transfer his membership, then Haymond did not transfer his club membership until March 2012, and the statute of limitations would not have run on Shelcon's claim to avoid this transfer.

It is a further question of fact whether it is possible to own a club membership without owning a residence at the club. The bylaws require that all club members own a dwelling, suggesting that Haymond lost his membership when he transferred his house. Therefore, there was conflicting evidence before the trial court regarding whether Haymond retained a club membership after transferring his house in 2006. If club rules prohibited membership without owning a dwelling, then Haymond's membership was apparently extinguished in 2006. On remand, the trial court should determine whether Haymond retained his club membership after transferring his residence.[10]

---

[10] The order avoided the transfers "to the extent necessary to satisfy the judgment of Shelcon Construction Group, LLC against Scott M. Haymond." CP at 234-35. The order does not give Shelcon control over the assets. But if Shelcon seeks to control the assets, and if club rules prohibit membership without a dwelling, then it would be impossible for Shelcon to possess such a membership absent ownership of a residence. Thus, the trial court may need to determine whether Shelcon is entitled to possess a membership absent owning a residence. There is conflicting evidence before us about whether club rules require members to have dwellings. If that is true, Shelcon may not be entitled to a membership, because the statute of limitations has run on the dwelling. In other words, because Haymond's prior residence is beyond the reach of

Because of these conflicting factual issues, we cannot determine as a matter of law when the transfer of the club membership occurred for the purposes of the statute of limitations. The transfer may have occurred in 2006 or 2008 when Haymond executed the bills of sale, or in 2012 when the club admitted Odenwalder. The trial court must determine whether the statute of limitations has expired on the transfer of the club membership. Shelcon's motion to avoid the transfer of the club membership would have been timely *only* if the trial court determines that the transfer of the club membership occurred in March 2012 when the board of directors approved Odenwalder as a member of the club because club rules required board approval of any new member. This is an issue of fact that we cannot resolve, because resolution requires weighing conflicting evidence.

"A court may abuse its discretion by failing to hold an evidentiary hearing when affidavits present an issue of fact whose resolution requires a determination of witness credibility." *Woodruff v. Spence*, 76 Wn. App. 207, 210, 883 P.2d 936 (1994). Here, the declarations before the trial court presented questions of witness credibility without which the trial court could not resolve the legal question whether the statute of limitations had run. For example, the former club president declared that the club's rules provided that a transferee of a club membership must obtain approval from the club's board of directors before being admitted as a member, but this declaration is contrary to the club's bylaws.

---

Shelcon due to the statute of limitations, the membership may not be available to Shelcon either, because club rules appear to prohibit possessing a membership without also possessing a dwelling.

15

Because the application of the statute of limitations therefore is an issue that requires determinations of witness credibility to resolve the conflicts between the written declarations, the trial court must hold further proceedings to resolve this question. Moreover, RCW 6.32.270, governing supplementary proceedings involving the disputed property of a debtor, provides that a third party appearing under a show cause order "may have such issue determined by a jury upon demand." Thus, the statute appears to contemplate that this issue involves credibility determinations appropriate for a hearing, at minimum. Because this court is an error-correcting court, and there is no ruling on the tolling of the statute of limitations for us to review, we remand to the trial court for further proceedings to determine whether the statute of limitations had run on the transfer of the club membership.

## VI. No Failure To Attach Property

Odenwalder also argues that the subject property was not properly attached under RCW 6.25.020. We disagree.

RCW 6.25.020 provides that the plaintiff "may" attach the property of one or more defendants as security for the satisfaction of a judgment. Property must be attached as provided in chapter 6.25 RCW. RCW 6.25.020.

But here, Shelcon never sought to attach property. The sole relief Shelcon sought, and the sole relief the trial court granted, was of avoiding the transfers under RCW 19.40.071, which does not require attachment under RCW 6.25.020. Thus, Odenwalder's argument fails.[11]

---

[11] Appellants Haymond and Odenwalder point cursorily to the trial court's failure to dispose of the trust assets in accordance with the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW.

16

Although we reverse the trial court's order avoiding the transfer, we consider the following arguments to "express guidelines to aid in whatever proceedings might follow." *Henry v. Town of Oakville*, 30 Wn. App. 240, 246, 633 P.2d 892 (1981).

## VII. ELEMENTS OF FRAUD MET

Haymond argues that the trial court erred by avoiding the transfers when it lacked evidence of a violation of the UFTA. We disagree.

The UFTA, RCW 19.40.041, provides in relevant part that a transfer by a debtor is fraudulent if the debtor made the transfer with "actual intent to hinder, delay, or defraud any creditor of the debtor." RCW 19.40.041(a). The statute provides 11 nonexclusive factors that a trial court may consider to determine whether the transfer is fraudulent.[12] RCW 19.40.041(b).

---

RAP 10.3(a) requires an appellant's brief to include an argument citing legal authority and the record. Where an appellant fails to cite authority, or where it gives passing treatment to an issue, we do not consider the argument. See *Brownfield v. City of Yakima*, 178 Wn. App. 850, 876, 316 P.3d 520 (2014). Here, neither appellant's brief discusses which sections of TEDRA were violated. Nor does either brief identify or argue how the trial court's order affected the trust as an entity, given that the trial court avoided transfers to the trust. Therefore, because these arguments lack citations to authority and are given merely passing treatment, we do not consider them.

[12] The factors are whether:
  (1) The transfer or obligation was to an insider;
  (2) The debtor retained possession or control of the property transferred after the transfer;
  (3) The transfer or obligation was disclosed or concealed;
  (4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
  (5) The transfer was of substantially all the debtor's assets;
  (6) The debtor absconded;
  (7) The debtor removed or concealed assets;
  (8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
  (9) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

A trial court may grant a creditor various kinds of relief if the debtor has made a fraudulent transfer, including but not limited to "[a]voidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim." RCW 19.40.071(a)(1). The party alleging actual intent to hinder, delay, or defraud must prove such intent by clear and satisfactory evidence. *Douglas v. Hill*, 148 Wn. App. 760, 767, 199 P.3d 493 (2009).

Haymond argues that Shelcon did not provide clear and satisfactory evidence that Haymond had actual intent to defraud Shelcon. Haymond argues that his declaration negated some of the 11 factors of fraud set forth in RCW 19.40.041. Haymond emphasized that his financial situation was "'solvent and in great shape,'" and he argues that most of the 11 fraud factors are "variations of insolvency." Br. of Appellant Haymond at 3. But contrary to Haymond's argument, the trial court need not find evidence of all 11 factors, nor is the absence of any single factor dispositive. *In re Bankruptcy of Huber*, 493 B.R. 798, 815 (Bankr. W.D. Wash. 2013). In fact, strong evidence of a single fraud factor may sustain a trial court's finding that a conveyance was fraudulent. *See Casterline v. Roberts*, 168 Wn. App. 376, 385, 284 P.3d 743 (2012) (holding that evidence that a debtor conveyed property to herself for no consideration sufficed to support finding of fraudulent conveyance).

The 11 factors in RCW 19.40.041(b) are non exclusive; the trial court "may" consider them, "among other factors," to determine whether there is clear and satisfactory evidence that

---

(10) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

RCW 19.40.041(b).

18

the debtor had actual intent to delay, hinder, or defraud. *Huber*, 493 B.R. at 815; *Sedwick v. Gwinn*, 73 Wn. App. 879, 886-87, 873 P.2d 528 (1994).

Here, in response to the motion to avoid the transfers, Haymond did not deny his intent to defraud: he merely declared that his financial health was good until 2011, and that he made the transfers to Odenwalder as trustee to provide for his daughter. But neither of these assertions is inconsistent with Haymond's actual intent to hinder, delay, or defraud creditors.

Moreover, several fraud factors in RCW 19.40.041(b) were present. The transfers were to an insider, Haymond's sister. Haymond retained possession and control of his residence and of his club membership until March 2012. The transfer was a mere "change of identity," performed under an administrative code designed to apply where "there is no change in beneficial ownership." *See* WAC 458-61A-211. The transfers were apparently for no monetary consideration. Haymond executed the transfers to protect his assets from legal or financial troubles for the benefit of his daughter. Haymond paid Odenwalder directly, and she in turn paid bills on the property, in an apparent plan to conceal that Haymond was the true payor.

The strongest evidence against the fraudulent nature of the transfers, as Haymond argues, is their timing. Haymond's financial solvency at the time of the transfers is not dispositive, but it is strong evidence against Shelcon's claim of fraud. The transfers were initially performed in 2006 but unrecorded until 2008, and not disclosed to the club until December 2011. Shelcon sued Haymond on December 31, 2009, and the trial court entered judgment against him in October 2011. In 2006 and 2008, Shelcon had not yet sued Haymond. Haymond's request to backdate the transfers with the club does not change the fact that Haymond transferred and recorded the transfer of both assets to Odenwalder or the trust by 2008, but it does suggest that

19

Haymond intended to defraud Shelcon in 2011 by backdating the transfers. At earliest possible date of the transfers, April 2006, Haymond was preparing to contract with Shelcon. Moreover, RCW 19.40.071 contemplates actual intent to defraud present *and future* creditors. That is, under the statute's plain terms, fraud can occur before a debt is incurred, and before the debtor's financial situation deteriorates.

Thus, the trial court had clear and satisfactory evidence that Haymond had actual intent to hinder, delay, or defraud Shelcon. Haymond never denied his intent to defraud Shelcon below, and the trial court had clear and satisfactory evidence demonstrating several of the statutory fraud factors.

## VIII. NO TESTIMONY REQUIRED

Haymond argues that the trial court erred by finding fraud without taking Shelcon's testimony. We disagree.

Haymond cites *Sedwick*, 73 Wn. App. at 887, to support his argument that the trial court was required to take testimony before finding fraud. In *Sedwick*, Division One of this court held that "in cases where the debtor denies that his or her intent was to defraud, the issue cannot be conclusively determined by the trier of fact until it has heard the testimony and assessed the witnesses' credibility." 73 Wn. App. at 887. The debtors in *Sedwick* denied that their intent was to defraud their creditors, but the trial court granted summary judgment to the creditor based on circumstantial evidence of the 11 fraud factors. 73 Wn. App. at 887. The *Sedwick* court's holding is expressly limited to "cases where the debtor denies that his or her intent was to defraud." 73 Wn. App. at 887.

Here, unlike in *Sedwick*, Haymond did not deny his intent to hinder, defraud, or delay Shelcon in the trial court.[13]  Haymond's declaration in opposition to Shelcon's motion to avoid the transfers explains that Haymond's financial health was good until 2011, and that he made the transfers to Odenwalder as trustee to provide for his daughter.  Neither of these assertions is inconsistent with Haymond's actual intent to hinder, delay, or defraud creditors.

As discussed above, the trial court had sufficient evidence to establish clear and satisfactory proof that the transfers were fraudulent.  *Douglas*, 148 Wn. App. at 767.  Haymond did not deny intent to hinder, delay, or defraud, and Odenwalder's deposition provided further evidence of Haymond's intent to keep his assets from Shelcon.  The trial court need not have taken Shelcon's testimony before avoiding the transfers.

## ATTORNEY FEES

Shelcon requests attorney fees pursuant to RAP 18.1.  It also requests sanctions against Odenwalder pursuant to RAP 18.9(a).  Because we vacate the order below, Shelcon is not the prevailing party and is not entitled to attorney fees at this time.  RAP 14.2, 18.1.

Odenwalder requests attorney fees, but fails to devote a section to her brief to this request and fails to cite authority entitling her to attorney fees.  Finding no such authority, we deny her request.  *See* RAP 18.1(a).

We reverse the order and remand to the trial court for an evidentiary hearing to determine several disputed factual issues and to resolve whether the statute of limitations has run on

---

[13] Haymond argues in his brief that he "denies any intent to defraud," but we must look to the facts before the trial court at the motion to avoid the transfers.  Br. of Appellant (Haymond) at 2.  It is not relevant whether Haymond now denies his intent to defraud.

No. 46235-4-II

Shelcon's fraudulent transfer claim regarding the club membership. We reverse the avoidance of the transfer of the house, because the statute of limitations has run.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Melnick, J.

_____
Sutton, J.

22